UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROSA ANGELICA GONZALEZ-CRUZ,

                         Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

Case # 17-CV-6406-FPG

DECISION AND ORDER

Rosa Angelica Gonzalez-Cruz brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, Gonzalez-Cruz's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On May 28, 2013, Gonzalez-Cruz protectively applied for DIB and SSI with the Social Security Administration ("SSA"). Tr.[1] 221-37. She alleged disability since October 1, 2011, due to a back injury stemming from a car accident, pinched nerves, stomach issues, mental health issues, and depression. Tr. 252. On August 14, 2014, and April 24, 2015, Gonzalez-Cruz and a vocational expert ("VE") appeared and testified via videoconference at hearings before

---

[1] "Tr." refers to the administrative record in this matter.

1

Administrative Law Judge David J. Begley ("the ALJ"). Tr. 47-86. Gonzalez-Cruz testified at both hearings with the assistance of a Spanish interpreter. *Id.* On November 17, 2015, the ALJ issued a decision finding that Gonzalez-Cruz was not disabled within the meaning of the Act. Tr. 21-46. On April 27, 2017, the Appeals Council denied Gonzalez-Cruz's request for review. Tr. 1-8. Thereafter, Gonzalez-Cruz commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ's decision analyzed Gonzalez-Cruz's claim for benefits under the process described above. At step one, the ALJ found that Gonzalez-Cruz had not engaged in substantial gainful activity since the alleged onset date. Tr. 30. At step two, the ALJ found that Gonzalez-Cruz has the following severe impairments: bilateral carpal tunnel syndrome, cervical degenerative disc disease, adjustment disorder, and obesity. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 30-33.

Next, the ALJ determined that Gonzalez-Cruz retains the RFC to perform light work[2] with additional limitations. Tr. 33-38. Specifically, the ALJ found the Gonzalez-Cruz can occasionally reach overhead and frequently handle and finger with her dominant right hand; must avoid concentrated exposure to extreme cold; should avoid hazardous machinery and unprotected heights; cannot climb ladders, ropes, or scaffolds or repetitively rotate, flex, or extend her neck; can perform simple, routine, repetitive tasks in a low-stress job without fixed production quotas or hazardous conditions; can tolerate only occasional changes in the work setting; and can occasionally make decisions and interact with coworkers, supervisors, and the public. Tr. 33.

At step four, the ALJ relied on the VE's testimony to determine that this RFC prevents Gonzalez-Cruz from performing her past relevant work. Tr. 39. At step five, the ALJ relied on the VE's testimony to determine that Gonzalez-Cruz can adjust to other work that exists in significant

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

numbers in the national economy given her RFC, age, education, and work experience. Tr. 39-40. Specifically, the VE testified that Gonzalez-Cruz can work as a garment sorter, small products assembler, and silverware wrapper. Tr. 40. Accordingly, the ALJ concluded that Gonzalez-Cruz was not "disabled" under the Act. Tr. 41.

**II.     Analysis**

Gonzalez-Cruz argues that remand is required because the ALJ did not properly develop the record by obtaining medical records from her treatment providers.[3] Specifically, Gonzalez-Cruz contends that the ALJ erred by failing to direct her to obtain more specific statements regarding her physical limitations from treating physicians Thomas Rodenhouse, M.D.[4] and Ronald Gonzalez, D.O.—particularly, in light of the fact that Gonzalez-Cruz was *pro se*. ECF No. 10-1 at 20-22.

**A.     Treating Physician Rule and Duty to Develop the Record**

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of

---

[3] Gonzalez-Cruz advances additional arguments that she believes require reversal of the Commissioner's decision. *See* ECF No. 10-1. The Court will not reach those arguments, however, because it disposes of this matter based on the ALJ's failure to sufficiently develop the record.
[4] As both parties recognize, the ALJ appears to mistakenly refer to Dr. Rodenhouse as Dr. Bakos. *See* ECF No. 10-1 at 18; ECF No. 12 at 25.

determination or decision for the weight we give [the claimant's] treating source's opinion."). The treating physician rule "necessarily dovetails with" the question of whether there was sufficient evidence in the record for the ALJ to assess the claimant's RFC. *See Swanson v. Colvin*, No. 12-CV-645S, 2013 WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013). Indeed, "the opinion of a treating physician is an especially important part of the record to be developed by the ALJ." *Ubiles v. Astrue*, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *8 (W.D.N.Y. July 2, 2012) (quoting *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 343 (E.D.N.Y. 2010)).

To that end, the ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed her application unless it is necessary to develop an earlier period. 20 C.F.R. §§ 404.1512(b), 416.912(b). The ALJ must also "make every reasonable effort" to help the claimant get medical reports from her medical sources. *Id.* Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5. Notably, however, when a claimant appears *pro se*, the ALJ's duty to develop the record is "heightened," and he "must 'adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered' and by 'scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts.'" *Moran*, 569 F.3d at 113 (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## B. Dr. Rodenhouse and Dr. Gonzalez's Opinions

In August 2013, treating physician Dr. Rodenhouse opined that Gonzalez-Cruz was, for temporary purposes, unable to return to work and "100% totally disabled." Tr. 376. Similarly, in August 2013, treating physician Dr. Gonzalez opined that Gonzalez-Cruz was partially disabled, and that her "ability to return to work [would] be determined by neurology." Tr. 368.

The ALJ afforded Dr. Rodenhouse and Dr. Gonzalez's opinions "little weight" because the final issue of disability is "reserved to the Commissioner," Dr. Rodenhouse and Dr. Gonzalez "provided no explanation for why [Gonzalez-Cruz] was disabled," and Dr. Rodenhouse and Dr. Gonzalez's opinions were "not supported by the longitudinal medical record." Tr. 37-38.

## C. Dr. Toor's Opinion

In September 2013, consultative examiner Dr. Toor opined that Gonzalez-Cruz "has moderate to severe limitations with standing, walking, bending, and lifting"; "moderate limitations with sitting a long time"; and "moderate limitations with pushing, pulling, reaching, or twisting of the cervical spine." Tr. 383. He further opined that Gonzalez-Cruz "has mild limitations grasping, holding, writing, tying shoelaces, zipping a zipper, buttoning a button, manipulating a coin, or holding objects with her hands." *Id.*

The ALJ assigned "partial weight" to Dr. Toor's opinion. Tr. 38. He reasoned that the identified limitations regarding Gonzalez-Cruz's hands and cervical spine "were supported by the longitudinal record," but he discounted Dr. Toor's opinion because it "did not provide a function-by-function" assessment in Social Security program terms—rendering it of "limited" value to the RFC determination—and because Dr. Toor had only examined Gonzalez-Cruz once. *Id.*

## D. ALJ's Assessment

Generally speaking, an ALJ's failure to request an RFC assessment from a treating physician does not automatically require remand. *Swanson*, 2013 WL 5676028, at *4. Here, however, the record contains no RFC assessment as to Gonzalez-Cruz's physical limitations from any treating physician after the alleged onset date. *See, e.g.*, *id.* at *5; *cf. Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (noting that, while the record did not contain formal opinions from treating physicians regarding the claimant's RFC, it still contained an assessment of the claimant's limitations from a treating physician). Moreover, in the *pro se* context, the Second Circuit has "repeatedly stated that[,] when the ALJ rejects the findings of a treating physician because they were conclusory or not supported by specific clinical findings, he should direct [the] *pro se* claimant to obtain a more detailed statement from the treating physician." *Cruz*, 912 F.2d at 12; *accord Lopez v. Comm'r of Soc. Sec.*, 622 F. App'x 59, 60–61 (2d Cir. 2015) (summary order).

Dr. Rodenhouse noted his opinion regarding Gonzalez-Cruz's temporary disability in a patient status report from her August 9, 2013 examination, Tr. 376, and Dr. Gonzalez noted his opinion regarding Gonzalez-Cruz's partial disability in a letter memorializing her August 7, 2013 visit, Tr. 368. The ALJ assigned these opinions only "little weight" based on his own review of the longitudinal record, but also because Dr. Rodenhouse and Dr. Gonzales failed to substantiate their conclusions of disability with further explanations. But courts have determined that "it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits." *Swanson*, 2013 WL 5676028, at *5 (quoting *Ubiles*, 2012 WL 2572772, at *9) (remanding where a treating physician's notes indicated permanent disability, and the ALJ rejected the notation as an "opinion" that encroached

8

on the Commissioner's determination, but the ALJ did not seek any RFC assessment from a treating source). It also appears that the ALJ, in turn, discredited Gonzalez-Cruz's claims regarding the severity of her limitations because "a review of the record . . . reveals no restrictions recommended by any treating physician." Tr. 36.

"Absent a reasonable explanation for the failure to obtain an RFC assessment from any treating source" as to, *inter alia*, Gonzalez-Cruz's physical limitations—particularly, given her *pro se* status—the Court cannot be certain that the ALJ satisfied his affirmative duty to develop the record. *Swanson*, 2013 WL 5676028, at *5; *see also Lopez*, 622 F. App'x at 60–61; *Iacobucci v. Comm'r of Soc. Sec.*, No. 1:14-CV-001260-GWC, 2015 WL 4038551, at *5 (W.D.N.Y. June 30, 2015). Accordingly, the Court remands this case for further administrative proceedings consistent with this Decision and Order.

## CONCLUSION

Gonzalez-Cruz's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 28, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court